This morning, the first case is In Re Asbestos Products Liability Litigation No. 15-1387, 88, and 89. Mr. Bograd and Mr. Henderson. May it please the court, Lewis Bogradford, Allen Sly and Wilson, Joseph Braun, and Thomas Gidden. Can I just ask, just at the outset, just an absolutely dumb question. You had a lot of activity in this case in the Northern District of Ohio and I guess some in Michigan going back to 1991. It's transferred to the MDL here and it looks like nothing happened for about two decades. Why? Your Honor, I must say I've been involved in this case for the last two weeks, so I'm not entirely clear on that. I think in part the MDL court was overwhelmed with the number of asbestos cases that came before it and the maritime docket did not rise to the top of its attention for a lengthy period of time. But I was as surprised as you that these cases have been sitting there as long as they have. All right. Before I go any further, do you wish to reserve time for a couple of questions? I was about to say that, Your Honor, when you had posed your question. I guess if I could save, reserve three minutes. That's fine. That's fine. Thank you. So how did you get involved in this case two weeks ago? I joined Motley Rice, the law firm that is co-counsel with the appellants. We were waiting for you. For the last 30 years, apparently. They needed the next new lawyer. Sadly, I have been practicing law since just about the time these cases, before these cases were filed. Either that or this is a kamikaze mission. I'm not sure, but okay. I hope it's not, Your Honor, and I don't think it should be. You're not going to get much of a chance to give prepared remarks, so we do have some questions. I have a question right out of the box. In the opening brief, you folks say that we're here on a plenary review. In your reply brief, you take the appellees to task and say that in this circuit, personal jurisdiction is an issue of law subject to plenary review. My first question to you is personal jurisdiction is a defense, right, under 12b-2? Yes, it is, Your Honor. Okay. And our case law seems to say that whether a defense has been waived or not is a question subject to abuse of discretion review, correct? That is correct, Your Honor. Okay. So help me with the logic here. If it's a defense and waiver of a defense, which is in essence what you guys have been arguing, is the matter subject to abuse of discretion review, why are you so insistent that, oh, that's wrong, it must be plenary review? Your Honor, I believe that the essence of the argument was that the facts are not in dispute because the facts are set forth in the record. Obviously, an appellee takes a contrary position about the meaning of the facts. But I would put a slightly different spin on the question of standard review, Your Honor, because it seems to me, and I think this is fundamentally a waiver case, not a law-of-the-case case, that we have emphasized that issue as well. But to the extent that law-of-the-case comes into this issue, it is because Judge Lambros clearly found that defendants had waived their personal jurisdiction defense. Well, stick with me on that because you're right. I think it's fundamentally a waiver case. That's your main argument, front and center, as I think it probably ought to be. And here's, you know, from just last year, from the Sharp case, we review a lower court's decision regarding the waiver of an affirmative defense for abuse of discretion. I mean, it seems clear as a bell. Your Honor, I'm not going to argue with you about the standard review. That may well be right, although I do think the question, because Judge Lambros had previously decided it, takes on a different color under this court's precedent on law-of-the-case. But I thought you said you wanted to rely on waiver primarily. I thought you said you wanted to rely on it. But I'm saying to the extent that Judge Robreno sought to depart from Judge Lambros' prior ruling on waiver. But didn't Mattson ask him to reconsider that ruling in 1991? They asked him to reconsider the transfer of cases. They asked him to reconsider his ruling on the transfer of cases to a district in Michigan for lack of personal jurisdiction. My understanding is he never ruled on that request, right? It was fundamentally a request for a 1292B certification, if I'm remembering correctly, Your Honor. I thought they asked him to reconsider his appendix 720. They asked him to reconsider his decision to transfer cases for lack of jurisdiction, lack of personal jurisdiction. I don't think that's right, Your Honor. I thought they objected to the transfer, and at least in some of the appeals they claimed to be preserving their right of appeal. Let's see if we get the facts straight. Okay, so there's problems with certain defendants being sued under the Jones Act, etc., in the Northern District of Ohio. And Order 40 tells the plaintiffs to do what? Well, Order 40 asks the plaintiffs to identify jurisdictions in which plaintiffs contend there is clear evidence of personal jurisdiction over those defendants so that the cases may be transferred pursuant to 1406 to those jurisdictions to pursue. And then Order 41 relates to the defendants, and it does what? Well, Order 41 follows on Order 40, and it sets forth the list of where the various cases would be transferred because the defendants had taken the position in the October and November 89 hearings that they couldn't properly make a decision about whether to waive their defense to stay in Cleveland or to accept the transfer until they knew where they were going and who else would be subject to jurisdiction there and the like. So what Judge Lambros did, and I think it's very explicit, especially in the transcript in November 89, and I can read you the relevant excerpts, is he said to the defendants, here's where I will transfer you on January 7th. However, I'm deferring the transfer until January 7th in order to give you time to consult with your clients about whether you would rather remain in Cleveland. Right. And some of them came back and said, well, you need to rule on some other things before we can make a decision on that, as I understand the record. But here's what I'm curious about. They raised their personal jurisdiction objection, right, as early as 1987, they say in their briefing. They raise it again when they file answers. They raise it yet again in response to the MDL transfer. And then they're put in deep freeze and told you can't do anything for a while. This, I guess, is what underlies Judge Robreno's assertion that they have consistently raised the issue. What is wrong with that view of the record? How does it fail, if it does, to accord with the reality and lead to the decision that Judge Robreno reached? Well, it departs from reality in a number of respects. And the key statement you made, with which I would disagree, is that they preserved the defense in their answers. There's no question. Didn't they file an answer that expressly preserved a personal jurisdiction defense? They did, Your Honor. But they did so after having been told by the court that filing an answer would constitute a waiver of the personal jurisdiction defense. At the same time, the court was inviting, I mean, they were getting mixed signals from the court. He said one thing, and then he also said something else that was in tension with that. I don't think so, Your Honor. He said, I'm going to transfer these cases that I'm not going to dismiss. I don't have personal jurisdiction. I'm going to transfer these cases to jurisdictions that do, unless defendants choose to waive their personal jurisdiction because they prefer to stay here. And apparently they chose neither of the above. Now, you could say that they weren't entitled to do that, but is a judge entitled to say, if you file an answer, you will waive? They file an answer, and they said, we don't waive. Is there anything specific that says that Mattson or APL waived their personal jurisdiction defense? The fact that they're filing an answer, Your Honor. That's the answer that contains such a defense. Your Honor, if we go back to the transcripts from October and November of 1989, the following colloquy takes place between the judge and the parties. The defense counsel says, it's my view, Your Honor, that a lot of these people will stay once they know the information. Judge Ambrose says, what if we make the disclosure date, having to do with discovery, the same date as the answer date, but if the position is that they are not leaving, that is, waiving their personal jurisdiction defense, they have to have their answers in on that date. And then he says, I need the plaintiffs to give me a list of where we're going to send these cases. And then unless, of course, the parties otherwise announce by January 5th, then on January 6th or 7th, these cases will be transferred. We've read the transcript. I'm familiar with that passage. Is your strongest argument because they filed an answer, they waived? Is that where you're hanging your hat? That and the representations in the various briefs that we've cited in our briefs where they acknowledge waiving, not defending. Because when they file the answer, they don't say, and we give up on personal jurisdiction. They say exactly the contrary. Can a district court judge, just as a matter of power, what rule would a district court judge rely on to say, I require you to waive this defense? You can't do that, right? Your Honor, he would have had no jurisdiction to continue with the cases because he had already found that he lacked personal jurisdiction. So therefore, when he said, I'm going to try, pursuant to 1406, I'm going to send these cases somewhere that has jurisdiction unless you tell me that you're waiving your defense. And I guess what I'm asking you is, just as a practical matter, if you wanted to preserve your defense, let's do it hypothetically this way. Would you be here, Mr. Bogart, saying, well, they clearly waived their personal jurisdiction defense because they didn't put it in their answer. If you know you're getting sent away and your case is going with you, right, don't you have to put your defenses in there, including your personal jurisdiction defense, if you want to assert it? I've got a defense. I don't want to waive it. It's going to be someplace. I don't know whether I'm going to agree with the defense there. How else do you preserve it? I think the answer is easy, Your Honor. You don't file your answer until after the case was transferred. And the fact that they filed the answer all by itself, that did it. Because the judge understood, and this is where the law of the case piece comes in, to whatever degree you want to think about it. The judge understood that by filing those answers, they were waiving the personal jurisdiction defense. I'm sorry, I say that my time is up. It's fine. They were waiving the personal jurisdiction defense and subjecting themselves to the jurisdiction of this court. And for the next however many years, the case proceeded on the assumption that they had waived it. They made representations in several briefs to the fact, every time somebody tried to transfer the cases somewhere else, they said, wait a second, we didn't agree to go anywhere else. We waived our personal jurisdiction defense so we could stay in Cleveland in front of you, Judge Lambros, because you've got this elaborate procedure set up to deal with these cases. They said that repeatedly. Judge Lambros understood that that was what they were doing. Now, 20 plus years later, after the case has been sent to the MDL, defendants all of a sudden say, oh, wait a second, we didn't waive it. Look, we stuck in our list of form defenses in our answer. We included a personal jurisdiction defense. But the fact is, once Judge Lambros said, I'm not going to dismiss these cases. I am going to transfer them to a jurisdiction that has personal jurisdiction, their choice was to accept that transfer and recognizing that whatever objections they had to that process would be available to them on appeal from the judgment in the new court, or to waive personal jurisdiction. They clearly waived. That's how we ended up. Well, if it was clear, we wouldn't be here, right? Well, it's a little less than clear, but I take your argument. Okay. And certainly Judge Lambros understood them to have waived, because if Judge Lambros had not understood them to have waived, he would have had no basis to continue to be involved in the cases against those defendants. Well, partially that was the plaintiffs. Once they got to Michigan and had some defendants in Michigan and some in Ohio, they're saying to themselves, I don't really want to be in two places. I'd rather be in one. Yes, that's right, Your Honor. They said, well, actually, when it went to Michigan, the whole case went to Michigan, but they said, we don't want to be in Michigan. We don't think we're not subject to jurisdiction there either. Send us back to Ohio, where we've already waived our jurisdictional objection. And then it was sent to the MDL? It was sent back to Ohio first, and actually the timing sort of overlaps, but the final order in Michigan to send the case back to Ohio took effect before the transfer order from the JPML. So it actually was transferred from Ohio. But I think perhaps clear is the wrong word, Judge Jordan, but I think it's the only sensible way to put together all the evidence here is to understand that Judge Lambros gave the defendants a choice, and I think that's very clear in the October and November in 89 hearings. Your choice is to be transferred somewhere else to litigate these cases where you may not be able to bring in third-party claims against other defendants. That's a good segue then to hear from Mr. Henderson, unless Judge Bloomberg has any questions. I have one question. If we made a determination that there was a waiver of personal jurisdiction by these defendants, what happens next at that point? Is there a trial back in Ohio because the transfer by the Moline District panel is only for pretrial proceedings? What do we do at that point? What will happen? Well, you would send the case back, Your Honor, to Judge Regrano for whatever pretrial proceedings remain completed, and at the conclusion of those, yes, the case would be, under lexicon, the case would be transferred back to the Northern District of Ohio, which now has personal jurisdiction because the defendants have waived the defense, and be sent there for trial. I wonder what was told to the plaintiffs about the status of their case during this 20-year gap. I wouldn't know what was said to them. Somebody said, how's my case coming? It's 20 years old. Your Honor, I've wondered the same thing. As I said, my involvement is two weeks old. Believe me, I was surprised when the first file I picked up was an appeal in a 30-year-old case, but the fact is these bestest cases have been operating on their own schedule for a very long time. There are still many of them from this era behind these. Obviously, appellants are as anxious as anyone to move these cases forward. Probably a lot of the original plaintiffs were dead at this point. Indeed, all three of these plaintiffs, Your Honor, while we've been referring to them by name, these are all estate cases. In fact, I think at least two of them were estate cases when the cases were filed in the first place. In fact, Your Honor, it may well be the defense strategy to drag these cases out so that it would be hard to collect the evidence to prove your case at trial. I can't speak to that. But in answer to your question, yes, ultimately, once pretrial proceedings were concluded, if you find, as we think you should, that these claims were- Are there any cases that have been resolved, either in Ohio or Michigan? I believe there have been several cases tried in Ohio. I don't know whether any of these cases have been settled, Your Honor. Wouldn't they come out one way or the other? How did they come out in Ohio? Well, again, I've seen reference to several defense verdicts at trial in at least a handful of cases. I don't know whether those are the only cases that have been tried. My esteemed colleague has been involved in this litigation a lot longer than I have, and I'll leave that question to him. All right. Thank you, Your Honor. Thank you, Mr. Henderson. As you're coming up, Mr. Henderson, one of my former partners who did defense work once said, I've never lost a case that didn't go to trial. Is that what's happening here? Not correct, Your Honor. I'm Harold Henderson. I'm here on behalf of Defendant Appellee's Matson Navigation Company and American President Lines Limited. Unfortunately, I have the dubious distinction of having been involved in these asbestos cases for 30 years. Although we're here on an appeal for three specific cases, they cannot be divorced from the context that there were 56,000 cases filed by the jocks firm in the Northern District of Ohio that were transferred to the Eastern District of Pennsylvania. Yes, Your Honor. Well, that's an awful big MDL to have to handle, and there's loads of respect for Judge Rebrano and the work he's done in having to deal with the asbestos MDLs of which these 56,000 were just one piece. Nevertheless, the judge in the Bartell and in the Jacobs decision, well, let me ask you this. In the Jacobs decision, he talks about how the defendants, quote, resisted the idea of being included in a federal asbestos MDL, but he says nearly, nearly were resisting that and arguably were justifiable in that given the length of time that these cases have lingered. And then says, in no way does this exhibit show the defendants' globally wavering defense of pay consistently raised since the inception of this litigation. Now, that's a very important quote to you, I know. It is indeed. Okay. But I want to go through some of those comments. First, the language that he's talking about in Exhibit Q is just this plain. If I'm not mistaken, there is a statement from your clients, quote, defendant ship owners in Siemens Maritime asbestos cases are believed to be virtually unanimous in their opposition to transfer and consolidation of such cases, meaning to the Eastern District of Pennsylvania. And then say, if transfer is to take place, ship owners' defendants request it be to the Northern District of Ohio. Procedures are already in place for the pretrial management there. Now, that's the second or third time where, by my count, and looking at the record, somebody said on the record, on behalf of your clients, we'd rather be in Ohio. Now, maybe this is sort of a W.C. Fields thing, on balance, you know, I'd rather be in Philadelphia. They'd rather be in Ohio than be in Philadelphia. But they said it, and they said it maybe three times in different contexts, on the record, on a unanimous petition, in Michigan. How can it be accurately stated that they, quote, consistently raised this from the inception of litigation when one thing they do seem to have consistently said is we'd rather be in Ohio? First, Your Honor, there are two elements, and I'm going to have to break my answer into two elements to properly respond to you. The first issue you raised is the opposition to the MDL consolidation. Shipowners certainly did not want these cases to be sent to Philadelphia. Recall that they were in a situation where there were many, many personal jurisdiction motions that were filed. Our judge said there is no personal jurisdiction. I'm sure you had good reasons for it. But I'm trying to get – here's the thing I'm trying to get at. You had a choice. It may not have been the choice you wanted. Our judge calls it a Hobson's choice. But, you know, whether you're talking about Mr. Hobson's stables back in merry old England or whether you're talking about a decision that a litigant has to make, it's still a choice. You had a choice and you said affirmatively, on the record, send us to the Northern District of Ohio. In an MDL, when you're looking at a transfer e-court, the issue of personal jurisdiction basically becomes irrelevant because, recall, personal jurisdiction is determined on where the cases were filed. So if there was going to be a national consolidation, the situation would – So is the record that you're – is the position you're taking that you said – somebody on your client's behalf said, on the record, don't send us to Philadelphia. Send us to the Northern District of Ohio, parenthetical, where there's no personal jurisdiction and we're going to say dismiss the case again or send us someplace else. Was that what was supposed to be read in there instead of the actual words here, which were procedures are already in place for pretrial management of these cases? Well, the idea was that there was to be pretrial consolidation. There were procedures in place in Ohio. Sure. But the point was the shipowners did not want any place.  You filed for dismissal and you lost on it. The judge said, I'm not dismissing him. I'm going to send him someplace where I think there is jurisdiction. That was his right under 1406, right? He had the power to do that, right? If appropriate. There are procedures and elements that must be considered under a 1406 transfer and the judge never addressed the case. It is a matter of statutory power. But a judge can choose not to dismiss and instead to transfer, right? He has that power, but there are procedures. Sure. Now, you didn't like where he sent you, but you can't deny that the statute gives him the power to say, I'm going to send you someplace rather than dismiss it, right? That's correct, Your Honor. Okay. So you didn't like where he sent you. You never gave an alternative. You just said, I don't like it. But he had the power to send you someplace else, and he did, and when you got to that someplace else, what did you say to the Michigan court? This is where, Your Honor, I was trying to say there's a difference between the opposition to the MDL and the opposition to Michigan. One thing our President's Counsel said is that this is the question. Answer the question. What did you say when you got to Michigan? I will first say what we did not say, and then I will answer what we said. Tell you what, why don't you first say what I'm asking you to say. Please answer my question first and then say what you want to say. And I apologize. What we said is the court had no power to transfer cases to Michigan because he did it sua sponte, without noticing an opportunity to be heard, which is required under Sixth Circuit law. He did not look at the elements that must be established for a 1404A transfer. He simply ignored them. So what did you say in Michigan? What we said is there is no subject matter jurisdiction in Michigan because the purported transfer of 44 cases was procedurally improper. Let's parse this up one at a time because Judge Jordan's question is key here. Didn't a number of the defendants in Michigan say that they want the case transferred back to Ohio for pretrial management and trial in Cleveland? Quote, unquote. The record says that, but once again, somebody filed that. Some attorney filed that. Matson and APL were part of those defendants where they were not. They were among the defendants that were sent to Michigan. So isn't that an obvious waiver of personal jurisdiction? No, Your Honor, it is not. What is it? Because the personal jurisdiction issue was still in flux, and in order to get a final appealable order to get the personal jurisdiction issue to go to the Sixth Circuit Court of Appeals, we had to have a trial. Did you go to the Sixth Circuit after saying in the Michigan court, send us back for pretrial and trial in Ohio? Didn't you, in the interlocutory appeal to the Sixth Circuit, then seek a mandamus, send us back to the Northern District of Ohio? There were two mandamus actions, one of which may not appear in the record. There was a mandamus action that wound up with a Sixth Circuit appellate decision in in raid allied signal link. I just got the record you guys gave us. The record you guys gave us, I look at it, and it looks to me like, again, some lawyer appearing on behalf of your clients said, hey, this isn't just wrong. It is so wrong. You should issue a mandamus and make them send us back to Ohio. Send us back to Ohio. Because the transfer itself was arbitrary and unlawful. So why would you want to go back to the place where the transfer court did something unlawful? Because we had to get a final appeal of the order to raise the issue in the Sixth Circuit Court of Appeals. So you did file a motion for reconsideration, and Judge Lambros did not rule on it, right? Correct. We also filed in Michigan to retransfer those 44 cases. In Michigan, it's also the Sixth Circuit, just as Ohio is. So why could you not have gone to the Sixth Circuit from something that was done by the court in the Eastern District of Michigan? Because the court in the Eastern District of Michigan ultimately determined that the cases had been improperly transferred and sent them back to the Northern District of Ohio. So you wanted to go anyway. For the very reasons which we said, the arbitrary transfer of cases was improper. The one thing we did not say, send the Michigan cases back to Ohio because we waived personal jurisdiction. When you said this, this is the language from your filing. Certain petitioners filed motions in the U.S. District Court for the Eastern District of Michigan to retransfer the cases and for an order that all proceedings be conducted in the Northern District of Ohio. Well, I don't understand what that means. If that doesn't mean, we want to go back and have everything happen there. We wanted final appealable orders that could then be taken to the Sixth Circuit Court. That may be what you were thinking. I'm just looking at what you said. You said, for all proceedings. One thing, there was a group of defendants represented by a different law firm that filed a document on the record and it's available, it's an airtime overseas corporation. It's attached in MDL document number 3365-10. That set of defendants filed a specific document saying, we withdraw our personal jurisdiction motion and we consent to jurisdiction in Ohio. Well, it's absolutely the case that people could say it in language that's more direct. I'm not denying that you could have come in and said, these are signed and sealed and with a drop of blood on it statement that we waive personal jurisdiction. What I'm wrestling with is your assertion that we were only doing this to get a final order when you've said things in front of these courts, including saying in front of one of them, if you send it back to the Northern District of Ohio, you will resolve a jurisdictional problem. I mean, that's one of the statements that was made. What is a court supposed to make of that unless it's a statement that you won't have a personal jurisdiction battle? It was a subject matter jurisdiction battle that was created by the unlawful transfers to Michigan, not a personal jurisdiction issue. Subject matter jurisdiction? Wait a second. I'm lost. Yeah, I'm lost too because the whole fight was about personal jurisdiction. I thought you were saying, there's no jurisdiction up there in Michigan, don't send us there. You got to Michigan, you said we don't want to be here, send us back to Ohio, there's no personal jurisdiction here. You say in a filing, if you send us back to Ohio, it resolves a jurisdictional matter. Where in any place in here is there a reference that this is going to solve subject matter jurisdiction? The word was not used. Yeah, it wasn't used because in context it's all about personal jurisdiction, right? No, the transfers to Michigan involved subject matter. The transfer itself was unlawful and without judicial authority. Any motions filed under 12B1, dear court, you ain't got subject matter jurisdiction. No, it was brought in the context of transfer of these cases because the transfers of 44 cases to Michigan were unlawful and were in excess of judicial authority. How is that the private court of subject matter jurisdiction? Under the John Light. So you send it to the wrong court, that means federal courts don't have jurisdiction over these cases? Isn't that just like a straight up personal jurisdiction problem? How did the court lose subject matter jurisdiction because of a bad transfer? Well, a transfer that is unlawful in itself does not vest proper jurisdiction in the receiving court. That was the point. And that is a subject matter jurisdiction issue. And that was what we were referring to would be corrected by sending the 44 cases back to Ohio. But that's still management and trial in Cleveland. I mean, it just doesn't read the way you're suggesting it. It looks like, hey folks, we want to be back in Ohio. And the implication of that for an outsider like us is that I'm impliedly waiving personal jurisdiction. It was sent here because for lack of personal jurisdiction, but we want to be back there. I mean, put yourself in our position. And then now you're bringing up arguments like subject matter jurisdiction, which was never raised before, ever. Your Honor, the transfer of 44 cases to Michigan was not as a result of lack of personal jurisdiction. It was a matter of judicial convenience in order to get judges to try cases that had been filed in Ohio. Well, I thought it was Orders 40 and 41. Judge Lambrose is saying I've got a real problem with personal jurisdiction. 40, please tell us where you think you can be. 41, defendants, you tell us what your position is, right? I think you're conflating several. Well, I'm not sure. What does Order 41 say relating to the defendants? 41 is different than OAL Order 125. 125 is what sent the cases to Michigan. 44 was dealing with personal jurisdiction issues and purported transfer. OAL Order 125 sent 44 cases to two federal judges in Michigan for purposes of trial. What you sought to do was vacate, I guess, in Michigan Order 125, and then you sought an alternative to transfer the issue for interlocutory appeal, right? Well, once again, you're conflating two separate types of things, Your Honor. Wait a minute. Did you file a motion to vacate Order 125? We asked for reconsideration of 125. And did you, either separately or as an alternative, move to certify the issue for interlocutory appeal to the Sixth Circuit? For 125, I cannot recall. Order 40 and 41, we did. That's in the appendix 559. And it looks like Judge Lambros never ruled on that motion. That's correct. He never did. And soon thereafter, it was transferred to the MDL? That was in a time period where the MDL was being created. These events were happening in 1990 and 1991. It was March of 1991 that the proposal for an MDL transfer, it was in July of 1991 that the actual MDL creation began. My biggest, just looking at life from 10,000 feet, you had Judge Lambros saying, I'm not going to dismiss these cases. I'm going to transfer them because I don't think I have personal jurisdiction unless some of the defendants waive. One, you come here and you've got a judge who's dismissing the cases rather than transferring them. It probably should have been transferred under 1406 as opposed to 1404 or 1631 as opposed to 1404. But nonetheless, the concern here is should Judge Rubrano have dismissed the cases or should he have done exactly as Judge Lambros had done, transferred them back? Under lexicon, an MDL transferee court does not have authority to transfer. Judge Rubrano also addressed that even if I had the authority to do so, I would not do a transfer because the plaintiffs were on notice that these cases were being filed in a place where there was no personal jurisdiction over the vast majority of the shipowner defendants, most of whom had no contact whatsoever. Those were later filed cases, right? We're talking about these cases, right? We're talking about these three plaintiffs and their cases. You said we really meant subject matter jurisdiction when we said to the court, quote, this solution, i.e., transferring back to the judges of the Northern District of Ohio will also eliminate a jurisdictional defect. You really meant subject matter jurisdiction. But in an earlier statement to the court in Michigan when you were fighting, or excuse me, in Ohio when you were fighting the transfer, the January 8, 1991 transcript says, this is a lawyer for the defendants. Again, you're including your two clients here. We had put our objection on the record before that trials of the Ohio cases in Detroit are something that our clients waived jurisdictional objections to proceed here in Cleveland. Now, was that a statement about subject matter jurisdiction, which of course you can't waive, or was that a statement about personal jurisdiction? We waived jurisdictional objections to proceed here in Cleveland. That was with regard to 20 cases, four of which had gone to trial and have been completed, and the discussion was what do you do with the remaining 16 cases for which the jury is still settled. Were APL and Matson defendants in those cases? I'm going to have to say I don't recall, Your Honor. But if they were, not to be too cute by half in a maritime case, but why doesn't that sink your boat? I mean, it says it right there. We waive our jurisdictional objections to proceed here in Cleveland. That was only for 20 specific cases. It was not for, at that time, 1,100 or 1,500 cases that were on file at that time, and the issue then became how do we get ultimate final appealable orders where there are issues that the Sixth Circuit can review on personal jurisdiction. Well, would you agree there's a little bit of a problem in characterizing the position that your clients took as consistent then? I don't agree, Your Honor. If you're saying in some courts, send me back, and in other courts, send me back, and as to these cases, send me back, but maybe not as to those cases, send me back, How can it be accurate to say they've consistently objected to jurisdiction in the Northern District of Ohio? Because the issues where you are citing send us back to Ohio, those were largely with the 44 cases in Michigan, and personal jurisdiction was not the issue. The issue was judicial authority to send 44 cases to another court simply for the purpose of trial so that you could have more and more trials going on at the same time. That is a different issue than waiting personal jurisdiction. Okay. All right. Why don't we hear from Mr. Beaubret. Thank you, Your Honors. Judge, do you have any questions? I'm sorry. No. Thank you. I think I can be very brief, Your Honor. First, I'd like to focus on the language you were just pointing to, Judge Jordan, about the January 91 hearing. There's no suggestion in the transcript whatsoever that Mr. Binsley was speaking for anything other than the entire group of cases that Judge Lambrous had proposed to transfer to Michigan, which included these three cases specifically, and he said, my clients waived jurisdictional objections to proceeding here in Cleveland. The indeed, Judge Romano. On behalf of APL and Madsen both? Presumably, he was speaking for, he represented both of them. He was speaking on behalf of his clients, and he says, our clients have waived. Where is that in the appendix? That's in 538, Your Honor, of the appendix. Okay. In the Jacobs' opinion, Judge Robreno specifically found that that statement at that hearing, he said defendants concede that Exhibit L, which was that hearing transcript, proves a waiver, but none of those cases are before this court in Jacobs. So in the Jacobs' opinion, he finds that defendants have conceded that they had waived personal jurisdiction in the group of cases to be transferred to Michigan, including these three cases. So these precise cases he had previously found defendants have waived personal jurisdiction, and it seems to me that should be the end of the story. He overlooks that fact when he renders his judgment without turning the facts of this particular case below. My colleague was also talking a lot about the need to go back to Ohio to get a final appealable order, but he would have been able to appeal a jurisdictional order following a trial in Michigan, following a trial in any other jurisdiction. The rulings of the transferor court follow the case to the transferor court, and as long as the issue remains a viable issue, they would have been able to raise whatever issues they wanted on appeal. The only reason they wanted to go back was because they wanted to litigate these cases in front of Judge Lambros. They were from Cleveland. They had this elaborate procedure set up. Dismissal based on personal jurisdiction at this point ends the cases, right? The statute of limitations has long since run. I believe it has long since run, Your Honor, yes. And not only is that the case, but it would work a substantial injustice for these three particular plaintiffs who for the last 25 years have been operating under the assumption based upon Judge Lambros' prior rulings that defendants had waived personal jurisdiction in this case, and to now find those claims lost would obviously be extraordinarily unfair. Thank you, Your Honor. Thank you very much. Thank you to both counsel, and we'll take the matter under advisement and call our